WALLACE INTERNATIONAL (WALLACE), PLAINTIFF *v.*
UNITED STATES, DEFENDANT

Court No. 90–12–00640

(Decided July 13, 1992)

*Siegel, Mandell & Davidson, P.C. (Harvey A. Isaacs, Paul A. Horowitz, Brian S. Goldstein, Laurence M. Friedman)*, for plaintiff.
*Stuart M. Gerson*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Vanessa P. Sciarra*), for defendant.

OPINION

I. INTRODUCTION

MUSGRAVE, *Judge:* Plaintiff Wallace International ("Wallace") moves for judgment on the agency record, alleging that the Department of Commerce ("ITA" or "Commerce") improperly relied on a single non-dispositive document to support its decision to reduce the United States Price (USP) of porcelain-on-steel cookware ("POS cookware" or "cookware") imported from the People's Republic of China (PRC) in *Porcelain-on-Steel Cooking Ware From the People's Republic of China: Final Results of Antidumping Administrative Review*, 55 Fed. Reg. 46,850 (November 7, 1990) ("Final Results"). Plaintiff also objects to the application of a per-unit rebate to each sale to plaintiff when evidence on the record, according to the plaintiff, shows that only a fraction of the sales were affected by any alleged rebate. Defendant argues that other evidence establishes that there was a rebate program designed to reduce the cost of the imported merchandise by an amount equal to the dumping duties payable on entry. For example, defendant points out that the

company that exported the merchandise in question to Wallace used the lower, rebated, prices in its questionnaire answers to Commerce.

## II. Facts

On January 27, 1988, Commerce initiated an administrative review of an antidumping order on POS cookware from the PRC following a request for review by Wallace and Amerport (U.S.A.) Ltd. ("Amerport U.S."). *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 53 Fed. Reg. 2262 (Jan. 27, 1988). Commerce reviewed shipments by China National Light Import and Export Corporation, Shanghai Branch ("CNLIP") and a third-country reseller located in Hong Kong, Amerport (H.K.), Ltd. ("Amerport H.K."), from May 20, 1986 until November 30, 1987. During that period, Amerport H.K. bought cookware from CNLIP and sold it to Wallace on an "open stock" basis. Amerport U.S. acted as Amerport H.K.'s agent in the United States for sales made to Wallace, although Amerport H.K. sold directly to Wallace.[1]

Amerport H.K. answered Commerce's dumping questionnaire on May 27, 1988. P.R. Doc.[2] 27 at 157. In its response, Amerport H.K. reported that Wallace received discounts for sales of cookware imported during the review period. C.R. Doc. 3 at 163A. Amerport H.K. supplemented its response with computer printouts on June 17, 1988, and again on September 16, 1988. C.R. Doc. 4 at 190A and C.R. Doc. 6 at 294A. These responses show that Wallace and Amerport had agreed to a discounted pricing structure for at least some products imported after antidumping duties were imposed (the "second tier price").

Commerce officials visited Amerport H.K.'s offices in September, 1988 to verify the information given in response to the May 27, 1988 questionnaire. Although Amerport H.K. sold directly to Wallace, Amerport H.K. officials claimed at the verification meeting in Hong Kong that they did not know Amerport U.S.'s resale price to Wallace. C.R. Doc. 13 at 3. This is, at best, a *non sequitur*. If Amerport H.K. "sold direct," then Amerport U.S. had no "sales price." Amerport H.K. directed the ITA officials to Amerport U.S. for that pricing information. C.R. Doc. 13 at 521A–524A. According to plaintiff, the Commerce officials were told that the second tier prices were agreed to unilaterally by Amerport U.S. without Amerport H.K.'s knowledge. Plaintiff's Brief at 6.

Commerce officials verified information at Amerport U.S.'s offices in February 1989. C.R. Doc. 18 at 570A. They were unable to verify the Amerport/Wallace sale prices because Amerport U.S. officials said that the information was in Hong Kong, not the U.S. *Id.* at 571A. Commerce was able, however, to verify that a two tier price structure had been set up for at least six invoices. *Id.* at 577A.

---

[1] Plaintiff's Memorandum in Support of Motion for Judgment on an Agency Record ("Plaintiff's Brief") at 5.

[2] Documents in the public record are referred to herein as "P.R. Doc." Documents in the confidential record are referred to as "C.R. Doc."

Amerport H.K. first reported that Wallace had paid the full invoice price on a number of invoices when it commented on the verification in March and April, 1989. C.R. Doc. 20 at 1057A, C.R. Doc. 22 at 1093A. Amerport H.K. submitted to Commerce the affidavit of Robert Samuel, a partner in the accounting firm of Price Waterhouse, Hong Kong. P.R. Doc. 85, Exhibit A. Mr. Samuels stated in the affidavit that he had supervised an audit of Amerport H.K.'s records of sales to Wallace for the period of May 20, 1986 through November 30, 1987. The audit revealed that Wallace had paid the full invoice price, and "no refunds were made in connection with the subject transactions." *Id*. at 2–3. Commerce was also able to verify that Wallace had paid the full invoice price on all invoices, but found that payment at the full invoice price did not represent the final price paid by Wallace. Final Results at 46,851.

Commerce published the preliminary results of its administrative review of the antidumping duty order on POS cookware from the PRC. *Porcelain-On-Steel Cooking Ware from the People's Republic of China; Preliminary Results of Antidumping Duty Administrative Review*, 54 Fed. Reg. 18,129 (Apr. 27, 1989). Commerce found a dumping margin of 66.65 percent for POS cookware exported by Amerport H.K. After review and comments by the interested parties, Commerce reduced the margin on sales to Wallace to 13.75 percent, because it found that CNLIP did not know the final destination of the cookware sold to Wallace. As a result, Commerce based the foreign market value on the price paid by Wallace for sales to third countries. P.R. Doc. 89 at 720–721.

Commerce determined that Wallace had been given a post-payment rebates, and noted that there were "indications that there may be an agreement of reimbursement of antidumping duties between certain parties." Final Results, 55 Fed. Reg. at 46,852. Commerce also found that it could not verify that the rebated price was restricted to the six invoices originally found to have been rebated. *Id*. Therefore, ITA used the best information available ("BIA") and applied the rebated price to all sales to Wallace. *Id*.

### III. DISCUSSION

Plaintiff asks this Court, pursuant to 19 USC §§1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii) (1991), to remand this case to the ITA for redetermination using the "first tier" invoice prices between Wallace and Amerport H.K. In the alternative, Wallace asks the Court to remand the case for redetermination using the "second tier" price only for the six invoices which were indicated in the United States verification report to be affected by rebates.

The government argues that the ITA's decisions concerning the "second tier" prices and BIA were based upon substantial evidence and should be upheld.

IV. Standard of Review

This Court is required to reverse Commerce's final determinations if they are not supported by substantial evidence on the record or are otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

V. Evidence of Rebates and Discounted Prices

Although plaintiff alleges that the ITA based its decision to use the rebated price on a single document, the record reveals other evidence of rebates. The record reveals certain irregular transactions which aroused Commerce's suspicions, including one instance where plaintiff's payment was received and deposited two months before the invoice was written. C.R. Doc. 23 at 1. Commerce found documentary evidence of a rebate scheme during the Hong Kong verification. Among other items, one of the most damaging for plaintiff was a facsimile sent from Amerport U.S. to Wallace, dated September 22, 1987, which "reconfirmed that (Amerport U.S.) waived any commission on cookware that was shipped * * * on your behalf at 66% AD." Although plaintiff claims that this is the only evidence on the record of a rebate agreement, there is other evidence. The most direct evidence of a rebate scheme is Amerport H.K.'s admission of second tier prices in its questionnaire responses. C.R. Doc. 3 at 163A. Additional documentary evidence is available in the record. For example, an internal Amerport memorandum described a November, 1987 meeting between Amerport and Wallace in which a Wallace representative complained about "waiting for his AD monies promised to him * * *." C.R. Doc. 18 at 597A.

Evidence that Amerport H.K. had received payment for the full invoice price from Wallace is vitiated by the Amerport H.K.'s admission that Amerport U.S. had granted discounts to Wallace without Amerport H.K's knowledge. In view of the inability of either Amerport H.K. or Amerport U.S. to produce records to verify Amerport/Wallace sales prices, the decision by Commerce to resort to BIA was appropriate under 19 U.S.C. § 1677e(c) (1992). The existence of the two tier pricing system, coupled with the additional evidence of an arrangement to rebate antidumping duties supports the ITA's selection of the "second tier" prices as BIA by substantial, if not incontrovertible evidence.

Commerce's decision to apply the rebated amount to all sales made is also supported by substantial evidence. All the sales under review made to Wallace were subject to the antidumping duties. Therefore, if there was a rebate scheme in place, it was likely that it extended to all those sales. Commerce was unable to verify the extent to which Amerport H.K.'s sales to Wallace received rebates, so it used as BIA the "second tier" price. In the absence of Commerce's satisfaction that the price paid on the six "second tier" sales excluded rebates, the decision to apply the

rebate price to all sales was supported by substantial evidence on the record.

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–620 (1966). Although two inconsistent conclusions might be drawn from the evidence, the Court finds that the Final Results, 55 Fed. Reg. 46,840, are supported by substantial evidence on the record, and are otherwise in accordance with law.

## VI. CONCLUSION

After examining the evidence and law presented to support the Motion for Judgment on the Agency Record, the Court finds that there is substantial evidence on the record to support ITA's decision to reduce the U.S. price of POS cookware and thereby increase the dumping margin. For this reason, plaintiff's motion is denied and the final determination in *Porcelain-on-Steel Cooking Ware From the People's Republic of China: Final Results of Antidumping Administrative Review*, 55 Fed. Reg. 46,850, is sustained.